UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIANO ANDRES CORZO OLIVELLA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-00673-DAD-CSK<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner Adriano Andres Corzo Olivella, a native of Colombia, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On March 18, 2022, petitioner entered the United States and was detained by immigration officials.  On March 18, 2022, petitioner was released on parole due to detention capacity.  On October 21, 2025, petitioner reported to the U.S. Immigration and Customs Enforcement ("ICE") office in San Francisco, California where he was re-detained.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, this Court recommends granting the petition for writ of habeas corpus and ordering petitioner's immediate release.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).  This Court below grants petitioner's motion to proceed in forma pauperis.

1

## I.   FACTUAL BACKGROUND

Petitioner is a native and citizen of Colombia.  (ECF No. 11-1 at 1.)  On March 18, 2022, petitioner entered the United States without inspection and was detained.  (Id. at 2.)  On or about March 18, 2022, petitioner was released on conditional parole due to detention capacity.  (Id.; ECF No. 11 at 2; ECF No. 14.)  On May 1, 2023, petitioner filed an application for asylum.  (ECF No. 11-2 at 2.)  On May 22, 2025, petitioner was served with a Notice to Appear charging him as inadmissible due to his presence in the United States without admission or parole.  (ECF No. 11-3 at 1.)

On October 21, 2025, petitioner reported to the Intensive Supervision Appearance Program ("ISAP") office in San Francisco, California for a scheduled office visit.  (ECF No. 11-2 at 2.)  Petitioner was escalated to GPS tracking at the ISAP office due to his domestic violence arrest on February 4, 2025.  (Id.)  ISAP instructed petitioner to report to the ICE office in San Francisco after the GPS monitor was installed.  (Id.)  On the same day, petitioner reported to the ICE office in San Francisco where he was re-detained.  (Id.; ECF No. 1 at 5.)

## II.   PROCEDURAL BACKGROUND

On January 26, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On January 30, 2026, this Court ordered respondents to file a response to the petition within seven days.  (ECF No. 8.)  Petitioner was granted ten days to file a reply to respondents' response.  (Id.)  Petitioner was also ordered to pay the filing fee or file an application to proceed in forma pauperis within fourteen days.  (Id.)  On February 2, 2026, petitioner filed a motion for appointment of counsel.  (ECF No. 10.)  On February 6, 2026, respondents filed an answer to the petition.  (ECF No. 11.)  On February 9, 2026, petitioner filed a pleading docketed as a supplemental statement to the petition.  (ECF No. 14.)  On February 9, 2026, petitioner filed a motion to proceed in forma pauperis.  (ECF Nos. 13.)  Examination of the affidavit reveals petitioner is unable to afford the costs of this action.  Accordingly, leave to proceed in forma pauperis is granted.  28 U.S.C. § 1915(a).

///

///

### III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

### IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued re-detention based on violation of the Fifth Amendment substantive and procedural due process clauses. (ECF No. 1 at 16-17.) Respondents argue that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) as an applicant for admission and that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (ECF No. 11 at 2-3).

On March 18, 2022, petitioner was released on conditional parole into the United States. (ECF Nos. 11 at 2, 11-1 at 2, 14.) An individual who is released on conditional parole is released pursuant to 8 U.S.C. § 1226(a). See J.S.H.M. v. Wofford, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). The Court need not determine, however, whether § 1226(a) applies or § 1225(b)(2) applies as respondents argue. To the extent respondents argue they have complied with § 1225(b)(2), this does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring). The Court analyzes petitioner's due

3

process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of pre-parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring

4

attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention then release on parole in March 2022 allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 3.5 years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. In addition, petitioner's release on parole was based on a finding that petitioner did not pose a risk of flight or danger to the community. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025) (release on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) or 8 U.S.C. § 1226(a) reflects determination by the government that the noncitizen is not a danger to the community or a flight risk). In light of all of the foregoing, the Court finds that petitioner's prior release on conditional parole created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Mohammad S. v. Andrews, 2026 WL 480095, at *3 (E.D. Cal. Feb. 20, 2026) (finding that petitioner released on conditional parole pursuant to 8 U.S.C. § 1226(a) had protected liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also

5

Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 3.5 years, petitioner was free from custody before his re-detention.  Petitioner claims he is the sole financial provider for his wife and two daughters.  (ECF No. 1 at 6.)  In the supplement to the petition, petitioner states that he received a "work permit and social security" on May 1, 2023, which respondents do not dispute.  (ECF No. 14 at 1; see ECF No. 11.)  The duration of petitioner's conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  While respondents note that petitioner has three domestic

6

violence arrests but no convictions, respondents do not argue that petitioner's release was revoked based on these arrests or that the arrests warrant re-detention.[2]  (See ECF No. 11.)  On this record, the fact that petitioner had prior arrests "highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine that petitioner's detention is now justified."  Navjot S. v. Warden of the Golden State Annex Detention Facility, 2026 WL 370140, at *3 (E.D. Cal. Feb. 10, 2026); see also S.E. v. Noem, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026) ("Further, petitioner will not be provided process through the criminal system to contest the basis of his arrest, because prosecution was rejected, charges have not been filed and the investigation of the incident in question has been closed…Therefore, the risk of erroneous deprivation of petitioner's liberty is high under such circumstances.").

Here, petitioner has been detained since October 21, 2025 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose.  See Zadvydas, 533 U.S. at 690; see e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of … [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest

[2]  Respondents describe the following three arrests: (1) "[o]n October 12, 2023, Petitioner was arrested for felony infliction corporal punishment on a spouse/cohabitant/date in violation of California Penal Code (CPC) § 273.5"; (2) "[o]n January 8, 2024, he was arrested for misdemeanor battery on a spouse/ex-spouse/date in violation of CPC § 243(e)(1); he received arrest relief under CPC § 851.93 on January 12, 2025"; (3) "[o]n February 4, 2025, Petitioner was arrested for felony assault with a deadly weapon with force by means likely to produce great bodily injury in violation of CPC § 245(a)(4) and for felony infliction of corporal injury on spouse/cohabitant/date in violation of CPC § 273.5(a)."  (ECF No. 11 at 2 (citations omitted); see ECF No. 11-4 at 4-5.)  In the supplement to the petition, petitioner states that the charges from his February 4, 2025 arrest were dismissed.  (ECF No. 14 at 1-2.)

7

in enforcing immigration laws and in public safety, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 2025 WL 3083934 at *6 (ED. Cal. Nov. 4, 2025) (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."[3] Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). Accordingly, the Court finds that petitioner is also entitled to relief on his due process claims.

**V.      MOTION FOR APPOINTMENT OF COUNSEL**

On February 2, 2026, petitioner filed a motion for appointment of counsel.  (ECF No. 10.) Because this Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied as unnecessary.

///

///

---

[3]  The Court recognizes that the government may revoke petitioner's release and ultimately determine that petitioner is a danger to warrant his re-detention, but it must do so lawfully, following the requirements of the Constitution.  It has failed to do so here.

8

## VI.    REQUEST TO STAY

Respondents alternatively request that this action be held in abeyance pending the Ninth Circuit's resolution of the appeal of Rodriguez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), appeal docketed, No. 25-cv-6842 (9th Cir. Oct. 29, 2025).  (ECF No. 11 at 3.)  In Rodriguez, the district court held that 8 U.S.C. § 1225(b) does not apply to noncitizens who are already present in the United States and who were previously released.  See Rodriguez, 779 F. Supp. 3d at 1258-61.  The instant action does not raise a statutory claim regarding the application of § 1225(b).  Rather, the issue in the instant action is whether the Due Process Clause requires a pre-deprivation hearing prior to petitioner's re-detention.  Respondents' request to stay this action should be denied.

## VII.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Petitioner's motion to proceed in forma pauperis (ECF No. 13) is granted.

2.  Petitioner's motion for appointment of counsel (ECF No. 10) is denied as unnecessary.

IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents be ordered to release petitioner Adriano Andres Corzo Olivella IMMEDIATELY and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.) or possessions, respondents be ordered to return those to petitioner at the time of release.

3.  Respondents be ENJOINED and RESTRAINED from re-detaining petitioner unless the government demonstrates by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4.  Respondents' request to stay this action be denied.

5.  Respondents be directed to file, within **seven** days of the adoption of these findings and recommendations, a status report addressing petitioner's status.

9

6. Judgment be entered in favor of the petitioner and the Clerk of the Court be directed to close this case

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 24, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Oliv673.157.imm(2)/2

10